UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ISAAC HICKS,

        Plaintiff,

   v.                                      CAUSE NO. 3:21-CV-960-DRL-MGG

BOWMAN *et al.*,

        Defendants.

OPINION AND ORDER

Isaac Hicks, a prisoner without a lawyer, filed an amended complaint against seven defendants. ECF 7. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Hicks, an inmate at Miami Correctional Facility, alleges that he has not been adequately protected from attacks by inmates and has not received adequate medical care following those attacks. On April 9, 2021, Mr. Hicks was jumped in his room in N-dorm. Early the next morning, Mr. Hicks told Sgt. Bowman about the attack. He also told Sgt. Bowman that he needed to be removed from the dorm or the inmates who attacked him would kill him. Sgt. Bowman laughed and asked if that was how Mr. Hicks got the black

eye. When Mr. Hicks indicated that the black eye was from the attack, Sgt. Bowman allegedly said that he didn't care and told Mr. Hicks to return to his room. Mr. Hicks said that he could not return. Sgt. Bowman told him to turn around and cuff up. Mr. Hicks begged not to be placed back in his cell, but Sgt. Bowman said, "Tough luck," and put Mr. Hicks back in his cell. ECF 7 at 3-4.

Mr. Hicks sent the warden an emergency grievance, but he received no response. Later, Mr. Hicks saw Officer Eakright and told him that he was in danger and needed to be moved. He told Officer Eakright the prisoners who attacked him on April 9, 2021 said they would kill him if he did not leave. Officer Eakright said, "Hey this is prison." *Id.* at 4. Mr. Hicks tried to follow Officer Eakright, but Officer Eakright allegedly told him to shut up and face his problems. Around 5:00 p.m. on April 10, 2021, Mr. Hicks was attacked and stabbed in front of Officer Eakright by the same inmates who attacked him the previous day.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. General requests for help, expressions of fear, and even prior

attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). By contrast, "a complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). "Even if an official is found to have been aware that the plaintiff was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner." *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005). Here, giving Mr. Hicks the benefit of the inferences to which he is entitled at this stage of the case, he has stated a claim against Sgt. Bowman and Officer Eakright for failure to protect him from the attack on April 10, 2021, by the same inmates who attacked him on April 9, 2021.

Mr. Hicks further alleges that, during the attack on April 10, 2021, Officer Eakright stood there and did nothing. Once an offender is under an attack, an officer cannot just stand by and do nothing. *See Schillinger v. Kiley*, 954 F.3d 990, 994-95 (7th Cir. 2020); *see also Borello v. Allison*, 446 F.3d 742, 748-49 (7th Cir. 2006) (noting Eighth Amendment violation can occur where prison official "did not respond to actual violence between inmates"). On the other hand, "correctional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene with a due regard for their safety: A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy." *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) (quotation marks omitted).

Though Officer Eakright was not required to put himself in danger to stop the assault, Mr. Hicks alleges that he took no action whatsoever to help him. Therefore, he will be permitted to proceed against Officer Eakright on an Eighth Amendment claim for taking no action whatsoever to help Mr. Hicks while he was being attacked on April 10, 2021.

After Mr. Hicks was stabbed, he was taken to the medical department. Mr. Hicks claims he was "refused any real treatment" by Shalana R. Seifert, but he does not describe his injuries (other than stating that he was stabbed), and he does not describe what treatment, if any, Ms. Seifert did provide. ECF 7 at 4. Mr. Hicks alleges that Ms. Seifert was trying to rush him out of the medical department. Mr. Hicks asked Ms. Seifert for stitches so his wounds would heal correctly. She said she would do it when she felt like it, but she never stitched Mr. Hicks' wounds. Mr. Hicks does not allege that his wounds were not cleaned and bandaged, but he does allege that he asked Ms. Seifert to clean his wounds "properly." *Id.* at 5. It is unclear why Mr. Hicks believes Ms. Seifert's cleaning of his wounds was not proper. Ms. Seifert responded by telling Mr. Hicks she would write down that he was refusing his vitals and treatment. She then ordered that Mr. Hicks be removed from the medical department.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a

4

lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible," *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Neither negligence nor medical malpractice constitute deliberate indifference. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and internal quotation marks omitted).

Though Mr. Hicks may believe that his wounds should have been cleaned more thoroughly or that he should have received stitches, it cannot be plausibly inferred from

5

the complaint that Mr. Hicks' wounds were not treated, or that Ms. Seifert's treatment of Mr. Hicks' wounds was not based on the exercise of her professional judgment. At best, Mr. Hicks has alleged negligence or medical malpractice, not deliberate indifference. Therefore, Mr. Hicks may not proceed against Ms. Seifert.

After Mr. Hicks had been assessed by the medical department, the yard officers placed him in a cell without a bed. He could not stand because his stab wounds hurt, so he laid on the floor. Between 2:00 a.m. and 4:00 a.m., he was moved to a cell with a bed. He remained in this cell until June 4, 2021, and he was not provided with his legal documents while housed there. Mr. Hicks has not linked these allegations to any defendant in this action. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). [P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Therefore, he cannot proceed on these claims.[1]

On June 4, 2021, Mr. Bishner, Unit Team Manager Angle, and Counselor Isaac told Mr. Hicks he would be moved back to N-dorm. Mr. Hicks explained that N-dorm was where he was attacked, and he could not go back there because the inmates that attacked

---

[1] Mr. Hicks' claims that he went several hours without a bed and was not provided with his legal documents could not have proceeded even if he had sued the person responsible for the alleged deprivations. Though a lack of bedding for more than a week may amount to an Eighth Amendment violation, *see Townsend v. Cooper,* 759 F.3d 678, 687 (7th Cir. 2014*)*, the sort of short-term deprivation described here is not sufficiently serious to implicate the Constitution. Likewise, the prison may place reasonable limits on when and how an inmate accesses his legal materials. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). It cannot be plausibly inferred from the allegations in the complaint that the brief denial of access to his documents impinged upon his right to access the courts. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996).

6

him would kill him. Unit Team Manager Angle stated that he did not care what happened to Mr. Hicks, and Mr. Hicks was ordered to return to N-dorm. He was attacked and stabbed almost immediately after his arrival. While Mr. Hicks' factual allegations are somewhat thin, he will be permitted to proceed against Mr. Bishner, Unit Team Manager Angle, and Counselor Isaac for placing him in N-dorm on June 4, 2021, despite knowledge of a specific, credible, and imminent threat to his safety.

Following the June 4, 2021, attack, Mr. Hicks was taken to the medical department. He arrived around 4:00 p.m. but he was not seen by Ms. McKinney until around 2:00 a.m. Mr. Hicks again claims he was "denied any real medical treatment" by Jenny McKinney, but he does not describe either his wounds or the treatment he did receive. ECF 7 at 6. He asked her to "properly clean" his stab wounds so they would not become infected, but he does not describe what was improper about the cleaning of his wounds and he does not allege that the wounds became infected. *Id.* Mr. Hicks told Ms. McKinney that his stab wounds hurt, and he needed stitches so that the wounds could heal properly. Ms. McKinney told Mr. Hicks he would be fine. Though Mr. Hicks may disagree with the treatment decisions made by Ms. McKinney, it cannot be inferred from these allegations that Jenny McKinney was deliberately indifferent to Mr. Hicks' serious medical needs. Therefore, he may not proceed against Ms. McKinney.

Mr. Hicks was moved to L-dorm. He filed an emergency grievance, but he received no response. On August 31, 2021, Mr. Hicks filed another grievance. He wrote numerous people or offices about his problems: the ombudsman, grievance specialist, medical, and classification. He received no response, and he says that he continues to be neglected. As

7

previously explained, Mr. Hicks has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure). Therefore, he may not proceed on his claims that his grievances were ignored.

For these reasons, the court:

(1) GRANTS Isaac Hicks leave to proceed against Sgt. Bowman and Officer Eakright in their individual capacities for compensatory and punitive damages for failing to protect Mr. Hicks from the attack on April 10, 2021, by the same inmates who attacked him on April 9, 2021, in violation of the Eighth Amendment;

(2) GRANTS Isaac Hicks leave to proceed against Officer Eakright in his individual capacity for compensatory and punitive damages for taking no action to help Mr. Hicks while he was being attacked on April 10, 2021, in violation of the Eighth Amendment;

(3) GRANTS Isaac Hicks leave to proceed against Mr. Bishner, Unit Team Manager Angle, and Counselor Isaac in their individual capacities for compensatory and punitive damages for failing to protect Mr. Hicks from the attack on June 4, 2021, by the same inmates who attacked him on April 9, 2021, and April 10, 2021, in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Shalana R. Seifert and Jenny McKinney;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) Sgt. Bowman,

Officer Eakright, Mr. Bishner, Unit Team Manager Angle, and Counselor Isaac at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 7);

(7) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sgt. Bowman, Officer Eakright, Mr. Bishner, Unit Team Manager Angle, and Counselor Isaac to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

May 13, 2022 *s/ Damon R. Leichty*
Judge, United States District Court